UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JIM LEE WRIGHT,

                Plaintiff,

v.                                              Case No.  5:07-cv-280-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability, disability insurance benefits and Supplemental Security income. (Doc. 1.)  The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 14 & 15.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance and supplemental security income benefits on February 28, 2005 claiming a disability onset date of November 24, 2003.  (R. 61-65.)  Plaintiff's application was denied initially (R. 30-35), and upon reconsideration. (R. 37-42.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 43.)  The ALJ conducted an administrative hearing on August 22, 2006. (R. 324-366.)  On January 4, 2007, the ALJ

issued a decision unfavorable to Plaintiff. (R. 11-19.)  The Appeals Council denied Plaintiff's request for review on May 7, 2007. (R. 4-7.)   Plaintiff then timely filed his Complaint challenging the decision of the Commissioner.

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3]  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1033 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] *See* Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 46 years old at the time of the ALJ's decision. (R. 61.)  Plaintiff has a General Equivalency Development (GED) diploma, and past work experience as a counter top maker and pipe layer.  (R. 90, 95.)  Plaintiff alleges the onset of disability as of November 24, 2003.  (R. 61, 63, 89.)

Plaintiff suffered a work related accident on November 24, 2003 resulting in a diagnosis of a lumbar contusion with a thoracic and cervical spine strain.  (R. 163.)  An MRI scan of the cervical spine revealed degenerative disc disease and disc protrusions at C5-C6 and C6-C7, contributing to significant left C5-C6 neural forminal narrowing and moderate bilateral C6-C7 neural forminal narrowing.  (R. 173.)  The MRI also revealed mild central stenosis at the C5-C6 level due to the disc protrusion.  (Id.)

An electomyograph study performed on June 25, 2004 revealed a bilateral L4-5 abnormality and probable cervical radiculopathy at C6-7.  (R. 193.)

---

[19]  See Wolfe at 1077-78.

[20]  See id.

[21]  See Doughty at 1278 n.2.

Dr. Antonio DiSclafani, determined that Plaintiff had chronic neck and upper left extremity pain and that an anterior cervical fusion at C5-6 and C6-7 could relieve the pain. (R. 247.) Without this fusion, Dr. DiSclafani noted that Plaintiff has a 7% impairment to the body as a whole. (Id.)

On October 11, 2005, Dr. Rodney Poetter, a licensed clinical psychologist, conducted a mental status clinical evaluation of Plaintiff. (R. 261.) Plaintiff arrived to the appointment fifteen minutes late unshaven and wearing a do-rag. (R. 261.) Plaintiff denied prior psychiatric hospitalization although he has received treatment at Marion Citrus Mental Health Center. Plaintiff reported that he takes pain and depression medication. He does not have a driver's license and has five prior charges for driving under the influence. Plaintiff is an admitted heavy drinker and reported a history of illegal drug use. According to Plaintiff, he has spent approximately 15 years of his life incarcerated. His work experience consists of laying pipe, making cabinets and working with solid surface counter tops.

During the examination, Dr. Poetter observed that Plaintiff expresses himself clearly and fluently with controlled appropriate responses. Plaintiff's emotional expression was modulated and appropriate. Plaintiff was oriented in all three spheres and there was no indication of severe memory dysfunction. (R. 262.) Plaintiff performed mental exercises quickly and without error which is inconsistent with severe concentration deficits. Plaintiff responded with 75% accuracy to structured questions assessing judgment and common sense reasoning skills. (Id.) When asked, Plaintiff compared all three pairs of dissimilar objects along relevant dimensions and provided one analogous response to three proverbs, suggesting mild deficits in abstract thinking.

DR. Poetter reported that Plaintiff is chronically suspicious but there was no indication of any hallucinatory processes. Dr. Poetter noted that Plaintiff's usual mood was sad, his appetite was poor and his sleep was limited to three to four hours a night. Additionally, Plaintiff had no energy, did not really like himself, had suicidal thoughts and strong feelings of guilt.

According to Dr. Poetter, Plaintiff is a chronically suspicious man who has recurrent depressive episodes. He is an active alcoholic and is currently overusing medication. Dr. Poetter's diagnostic impression was that Plaintiff is symptomatic of alcohol and nicotine dependence, depressive disorder NOS, personality disorder NOS with paranoid and antisocial personality traits. (R. 262) However, Dr. Poetter found no indication of severe cognitive or memory deficits and found that Plaintiff appears capable of independently managing any funds to which he may be entitled. (Id.)

Dr. Steven L. Wise, Psy. D., a non-examining clinical psychologist, reviewed Plaintiff's record and completed a psychiatric review techique on October 20, 2005. (R. 263.) Dr. Wise's assessment of Plaintiff reflected mild limitations in activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (R. 273.)

In a mental residual functional capacity assessment completed by Dr. Wise he found that Plaintiff was moderately limited in his ability to carry out detailed instructions and set realistic goals or make plans independently of others. (R. 277-278.) Additionally, Dr. Wise noted that Plaintiff was moderately limited in his ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number

and length of rest periods. (Id.)  Finally, Dr. Wise noted that Plaintiff had moderate limitations in his ability to get along with coworkers without distracting them or exhibiting behavioral extremes. (Id.)

Dr. Wise concluded that, in general, Plaintiff was in tact cognitively.  (R. 279.)  Dr. Wise opined that although Plaintiff's personality will distract others at times, he remains capable of simple goal directed interactions. (Id.)  Ultimately, Dr. Wise determined that Plaintiff was "okay for simple tasks." (Id.)

The ALJ conducted a hearing on August 22, 2006 and received testimony from Plaintiff. (R. 324-367.)  During the hearing, Plaintiff described his health problems as pain in his neck, back, legs and arms and testified that he had been using a cane for a year or two.  (R. 338-339.)  Plaintiff testified that he feels sick all of the time.  (R. 339.)  Plaintiff takes pain medication but is still not pain free.  (R.343, 351.)  Plaintiff did not provide any testimony about his mental health problems.  (R. 324-368.)

The ALJ determined that Plaintiff has severe impairments that include: cervical and lumbar degenerative disc disease, depression, personality disorder and substance abuse disorder.  (R. 19.)  Although the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms entirely credible.  (R. 16.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (Id.)

The ALJ concluded that Plaintiff has the residual functional capacity to perform low stress, unskilled, light work activities and in particular that:

>the claimant can lift and/or carry 10 pounds occasionally and up to 10 pounds frequently. The claimant can stand and/or walk 2 hours in an 8-hour work day. The claimant can sit 6 hours in an 8-hour workday. The claimant should avoid frequent ascending and descending stairs; should avoid pushing and pulling motions with the lower extremities; and can perform pushing and pulling motions with the upper extremities within the aforementioned weight restrictions. The claimant can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. The claimant can balance, stoop, kneel, crouch, and/or crawl occasionally. Due to moderate pain and medication side effects the claimant should avoid hazards in the workplace such as moving machinery unprotected heights and uneven pavement. The claimant remains capable of understanding, remembering, and carrying out low
stress, simple, repetitive job instructions. (Id.)

In making this determination, the ALJ accorded "great weight" to the opinion evidence of the state medical consultants. (R. 17.)

The ALJ determined that based upon Plaintiff's residual functional capacity, Plaintiff was unable to perform any past relevant work as a counter top maker and as a pipe layer. However, after obtaining the testimony of a vocational expert, the ALJ ultimately concluded that Plaintiff was not disabled because he is able to perform work that exists in significant numbers in the national economy. (R. 18-19.)

## IV. **DISCUSSION**

Plaintiff's sole argument on appeal is that the ALJ erred by failing to include all of Plaintiff's mental limitations in the hypothetical question presented to the vocational expert. When presenting a hypothetical question to a vocational expert, in addition to claimant's educational level, age, work skills, and experience, the ALJ is required to describe all of the claimant's impairments..[22] The hypothetical, however, need only

---

[22] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

9

include limitations supported by the record.[23]

    At the hearing, the ALJ asked the VE the following hypothetical question:

> [I] want you to assume an individual of the claimant's age, education and past work experience. The individual would require work, which is low stress, simple unskilled, one, two or three-step instructions. The individual could only lift/carry 10 pounds frequently, 20 pounds occasionally. And stand/sit six. Should avoid frequent ascending and extending–should avoid frequent ascending and descending stairs. Can perform pushing and pulling motions with his upper. Should avoid pushing and pulling motions with his lower extremities...
>
> *****
>
> ...Can perform activities requiring bilateral manual dexterity. Due to mild to moderate pain of medication side effects should avoid hazards in the workplace. Should be restricted to a relatively clean work environment. As far as postural activities no climbing, occasional balancing, stooping, crouching, kneeling and crawling
>
> ****
>
> ...Assume further the individual has depression, which would affect his ability to concentrate on complex or detailed tasks. He would remain capable of understanding, remembering and carrying out simple job instructions. Do you have an opinion whether such an individual could perform any of the claimant's past work?

(R. 358-360.)

    Plaintiff argues that the hypothetical was incomplete because the ALJ did not include Plaintiff's moderately limited abilities to: (1) complete a normal workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The only mention of these limitations in the record are in Part I of the form, "Summary Conclusions" prepared on October 20, 2005 by Dr. Wise, a non-examining state agency

---

[23] *See* id.

psychologist. There are several basic problems with the Plaintiff's argument.

First - and separate from the assessment by Dr. Wise which the ALJ relied upon - the Plaintiff never asserted administratively that he was disabled as a result of a mental impairment. There was no mention of a mental impairment in his disability paperwork nor did the Plaintiff even mention a mental impairment at the hearing. Moreover, there is no evidence that the Plaintiff ever had on-going mental health treatment. Nonetheless, because the record contained a consultative examination by Dr. Poetter, who diagnosed Plaintiff with a depressive disorder (NOS) and a personality disorder (NOS), the ALJ included these impairments as severe impairments at step two. However, because Dr. Poetter did not include any restrictions or limitations in his assessment the ALJ was not required to include any mental restrictions in his RFC.

The ALJ did, however, refer to the mental limitations included in the RFC assessment prepared by Dr. Wise, a non-examining reviewing psychologist in view of the fact that there were no other mental restrictions or limitations in the record. Because Dr. Wise was a reviewing physician his opinion was not entitled to any special consideration and as such the ALJ was not required to adopt any of the limitations noted by Dr. Wise.[24] Nonetheless, the ALJ did adopt limitations consistent with Dr. Wise. And contrary to Plaintiff's argument the ALJ included these restrictions in his hypothetical by asking the VE to assume that Plaintiff was limited to simple, unskilled, low stress work, involving simple one-two-three step instructions.

---

[24] 20 C.F.R. § § 416.927(d)(1) & 405.1527(d)(1) (stating generally that the ALJ will give more weight to the opinion of a source who has examined a Plaintiff than to the opinion of a source who has not examined a Plaintiff).

The problem with Plaintiff's argument is that he confuses Part I of Dr. Wise's RFC assessment with Part III, which is the relevant part of the form addressing the functional mental limitations. After noting in Part I of the form that Plaintiff had moderate limitations in his ability to carry out detailed instructions, in completing a normal workweek without interruption from his symptoms, in getting along with co-workers and in setting realistic goals, Dr. Wise concluded that on a functional level Plaintiff retained the RFC to perform work involving simple instructions and work that has simple, goal-directed interactions with others. This functional limitation would limit a claimant to simple, unskilled, low stress work, involving simple instructions - the precise limitation included in the hypothetical posed to the VE. Accordingly, to the extent that Plaintiff argues that the ALJ was required to include Dr. Wise's functional mental limitations in his hypothetical, the Plaintiff's argument fails because the ALJ did include in the hypothetical the functional limitations assessed by Dr. Wise.

Although Plaintiff does not directly argue that the ALJ failed to include other limitations in his hypothetical, Plaintiff conflates the ALJ's RFC evaluation with certain findings that the ALJ made at step three of the sequential evaluation in determining whether the Plaintiff met a listed impairment. Plaintiff suggests that the ALJ should have included in the hypothetical the "findings" that the claimant's social functioning was moderately limited and his ability to adequately maintain his concentration, attention and pace was moderately limited. The ALJ was not required to include this exact language in the hypothetical because these "findings" were part of the threshold determination the ALJ was required to make in determining whether a mental impairment meets or equals a listed impairment at step three and were not limitations that the ALJ included in

his RFC finding at step four. Therefore, the ALJ was not required to include in his hypothetical express language that the Plaintiff was moderately limited in social functioning and his ability to maintain his concentration, attention and pace. Accordingly, any suggestion by Plaintiff that the ALJ erred in this regard is without merit.

In addition to the fact that the ALJ was not required to include these precise step three findings in his hypothetical, the hypothetical actually posed by the ALJ included the functional equivalent of these findings. For example, by including a limitation in the hypothetical to simple, low stress unskilled work involving simple instructions the ALJ recognized and took into account any moderate limitation in any ability of the Plaintiff to maintain concentration, persistence and pace.

In sum, the ALJ fully and fairly developed the record regarding Plaintiff's mental limitations and posed a hypothetical to the VE that included all of Plaintiff's functional mental limitations, which were factually supported by the record. Accordingly, because the opinion of the VE was based upon a complete hypothetical the VE's opinion that there were a significant number of sedentary jobs that Plaintiff could perform constitutes substantial evidence that supports the decision of the ALJ that Plaintiff was not disabled.

## V. **CONCLUSION**

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter judgment

13

accordingly and close the file.

      **IT IS SO ORDERED.**

      **DONE AND ORDERED** in Ocala, Florida, on August 27, 2008.

_____<br>
GARY R. JONES<br>
United States Magistrate Judge

Copies to:
    All Counsel